UNITED STATES of America, for the Use and Benefit of John S. IRVINE, Donald W. Irvine, Frank O. Irvine, d/b/a Irvine Company,

v.

TRAYLOR BROS., Inc., and Indemnity Insurance Company of North America.

Civ. A. No. 1624.

United States District Court
N. D. Indiana, South Bend Division.

July 27, 1955.

Henry B. Walker, Henry B. Walker, Jr. and William G. Greif, Evansville, Ind., Paul R. Moo, South Bend, Ind., for plaintiffs.

Farabaugh, Chapleau & Roper, South Bend, Ind., John E. Early, Evansville, Ind., for defendants.

PARKINSON, District Judge.

This is a civil action under the Miller Act, 40 U.S.C.A. § 270a et seq., founded upon an amended complaint in two paragraphs. To paragraph one the defendants filed an answer in admission and denial and filed no answer to paragraph two. Liability of the defendants in the sum of $1,024.83 under paragraph two of the amended complaint is, therefore, admitted by the pleadings and was admitted by the defendants on the trial. The defendant, Traylor Bros., Inc., filed an amended counterclaim to which the use plaintiffs filed an answer in admission and denial.

With the issues thus formed the cause was submitted to the court for trial and it is a decision of the cause on the merits which now demands the attention of this court.

In the opinion of this court there is no question under the evidence that the defendant, Traylor Bros., Inc., and the use plaintiffs orally agreed to a rescission of the plumbing, heating and exterior steam distribution subcontract and it was terminated by mutual agreement of the parties. As the result of that oral agreement the defendant, Traylor Bros., Inc., took over the work thereunder and cannot recover on its amended counterclaim.

The court admitted the written rescission agreement, offered in evidence as plaintiffs' exhibit No. 2, with reservation, but has given no consideration thereto because it was not executed by the defendant, Traylor Bros., Inc., and does now find that the subcontract between the use plaintiffs and the defendant, Traylor Bros., Inc., was rescinded by their oral mutual agreement, of which the written rescission agreement was simply a reduction to writing, and since not executed by both parties thereto was not binding on either but did not affect the oral agreement of rescission and

termination by which both parties thereto are completely bound.

Under the circumstances from the evidence in the record we hold that there was an oral agreement of rescission of the subcontract between the use plaintiffs and the defendant, Traylor Bros., Inc., during the performance of the work; that the work by the use plaintiffs thereunder was terminated by the mutual oral agreement of the parties thereto; that the defendant, Traylor Bros., Inc., took over the work under said subcontract voluntarily and by the mutual oral agreement of the parties and that the use plaintiffs are entitled to recover quantum meruit for services performed and materials furnished by the use plaintiffs under the subcontract.

At the time of the oral agreement to rescind and terminate, as found by the court, the undisputed evidence is that the use plaintiffs submitted to the defendant, Traylor Bros., Inc., a statement of the services performed and materials furnished thereby and on September 30, 1953, the defendant, Traylor Bros., Inc., represented and certified to the Bureau of Yards and Docks of the Navy Department that the work performed on the Irvine Company Plumbing and Heating subcontract was 30% complete and had a value of $122,715.00, which was $7,071.39 more than the amount claimed by the use plaintiffs. Accordingly the evidence conclusively shows that the amount of $115,643.61 for services performed and materials furnished was fair and reasonable and admitted and certified by the defendant, Traylor Bros., Inc., to be so.

The uncontradicted evidence is that the defendant, Traylor Bros., Inc., had paid to the use plaintiffs the sum of $60,798.91; that the use plaintiffs agreed that they had over spent for labor the sum of $4,011.18, and thereafter the defendant, Traylor Bros., Inc., paid to suppliers of the use plaintiffs the sum of $31,080.79. The defendants are entitled to credit therefor in the sum of $95,890.88 leaving a balance due and owing to the use plaintiffs in the sum of $23,763.91, for which the use plaintiffs are entitled to judgment on paragraph one of the amended complaint and the use plaintiffs are entitled to judgment in the sum of $1,024.83 on paragraph two of the amended complaint under the pleadings and admission of the defendants.

Therefore, the court having considered all of the evidence, the arguments of counsel, and the law applicable thereto, does now make the following

### Findings of Fact.

#### 1.

On June 10, 1953, the United States of America through the Department of the Navy, Bureau of Yards and Docks, and the defendant, Traylor Bros., Inc., entered into written contract NOy–76135 for the construction of Airmen Dormitories and Mess and Administration Buildings at the Air Force Base, Bunker Hill, Indiana.

#### 2.

On June 10, 1953, the defendant, Traylor Bros., Inc., as principal, and the defendant, Indemnity Insurance Company of North America, as surety, executed a payment bond in the penal sum of $780,000 conditioned upon the prompt payment by the principal to all persons supplying labor and materials in the prosecution of the work under contract NOy–76135, which was accepted by the United States of America.

#### 3.

On June 22, 1953, the defendant, Traylor Bros., Inc., issued its purchase order No. 34832 to the use plaintiffs for the performance thereby of all plumbing, heating and steam distribution work at a price of $396,087, and thereafter issued purchase order No. 37144 to the use plaintiffs for the performance of work at a price of $945.

#### 4.

On or about July 9, 1953, the use plaintiffs commenced the performance of the work required of them under said purchase order No. 34832.

**5.**

John Gangl was the general superintendent of the defendant, Traylor Bros., Inc., on the Bunker Hill Air Base Job during the period from June 22, 1953, to and including at least August 1, 1954, and as such was in complete charge of all phases of the performance of contract NOy–76135 for and on behalf of the defendant, Traylor Bros., Inc., including the supervision, inspection and direction of the various subcontractors' work and was the designated principal representative with authority to act for the defendant, Traylor Bros., Inc., in all matters concerning the performance of the work under contract NOy–76135 on behalf of the defendant, Traylor Bros., Inc.

**6.**

Ferris E. Traylor is the president of the defendant, Traylor Bros., Inc., and was the officer of said defendant to whom John Gangl reported and was the officer in general supervision and control under contract NOy–76135 under whom John Gangl was in charge for and on behalf of the defendant, Traylor Bros., Inc.

**7.**

Irvine Company was a partnership composed of John S. Irvine, Donald W. Irvine and Frank O. Irvine engaged in the heating and plumbing contracting business, with principal offices in Hopewell, Virginia, with John S. Irvine as the partner-in-charge of the work under the subcontract and was in overall supervision and control of the work being done by the use plaintiffs for the defendant, Traylor Bros., Inc., thereunder.

**8.**

J. Phillip Blythe was the general superintendent of the use plaintiffs at the job site and in general charge and supervision of all phases of the performance of the work being done by the use plaintiffs for the defendant, Traylor Bros., Inc.

**9.**

During the month of August, 1953, a brief work stoppage occurred among the employees of the use plaintiffs but they returned to work and continued to so work until September 4, 1953, when practically all laborers and mechanics employed by the use plaintiffs under their subcontract walked off the job and refused to return to work.

**10.**

No issue of wages or wage rates was involved in the dispute between the use plaintiffs and their employees or the unions representing said employees but the principal grievance was disatisfaction with J. Phillip Blythe because he was not a card carrying union member.

**11.**

On Friday, September 25, 1953, a meeting was held at the Air Base at Bunker Hill, Indiana, attended by John S. Irvine, John Gangl, a Union representative and a Federal labor conciliator and the union representative demanded that a card carrying union member replace J. Phillip Blythe on the job and that he be withdrawn from the job site and John Gangl agreed to the demands of the union representative and agreed that one Charles Miller, a card carrying union member, would be on the job on Monday morning, September 28, 1953, and that J. Phillip Blythe would remain on the base only long enough to familiarize Charles Miller with the job, and the union representative thereupon agreed that the employees of the use plaintiffs would return to work, which agreement was ratified by the officers of the defendant, Traylor Bros., Inc., but was not consented to by the use plaintiffs because they contended they could not carry on their work under the subcontract unless they could be represented by a general job superintendent of their own choosing.

**12.**

On Monday morning, September 28, 1953, the employees of the use plaintiffs returned to work and Charles Miller, whose services were paid for by the defendant, Traylor Bros., Inc., reported for duty; began to familiarize himself with the status of the job, and during the first

week thereafter. J. Phillip Blythe remained in general charge but instead of issuing orders and instructions directly to the heating superintendent and the plumbing superintendent, both of whom were card carrying union members, he gave the general orders and instructions to Charles Miller for relay thereto, and thereafter the said Charles Miller assumed more and more responsibility until he took over completely on or about October 16, 1953.

13.

On Tuesday, September 29, 1953, the defendant, Traylor Bros., Inc., issued a second partial payment check to the use plaintiffs for work performed in the amount of $41,444.69.

14.

On or about Friday, October 2, 1953, a meeting took place between Ferris E. Traylor and John S. Irvine wherein it was understood between the defendant, Traylor Bros., Inc., and the use plaintiffs that the use plaintiffs would give up their subcontract by mutual consent of the parties thereto.

15.

On or about Monday, October 5, 1953, employees of the defendant, Traylor Bros., Inc., commenced taking a physical inventory of all supplies and materials of the use plaintiffs on hand at the job site at Bunker Hill Air Base with the cooperation and assistance of personnel of the use plaintiffs and on or about Wednesday and Thursday, October 7 and 8, 1953, an estimator employed by the defendant, Traylor Bros., Inc., came to the field offices of the use plaintiffs and checked, reviewed and copied various items from the estimate sheets, payroll records, materials invoices, and other books and papers of the use plaintiffs pertaining to the subcontract work, all of which data was made freely available by the use plaintiffs.

16.

Sometime during the week of October 12, 1953, the use plaintiffs and the defendant, Traylor Bros., Inc., orally agreed that the defendant, Traylor Bros., Inc., would pay the payroll of the use plaintiffs due and payable on Friday, October 16, 1953, for the work-week ending Tuesday, October 13, 1953, and said payroll was in fact paid by the defendant, Traylor Bros., Inc., on Friday, October 16, 1953.

17.

On or about Wednesday and Thursday, October 14 and 15, 1953, conferences were held between John Gangl, John S. Irvine and J. Phillip Blythe concerning the amount of direct labor performed; the dollar amount thereof claimed by the use plaintiffs, and the amounts for which the use plaintiffs were indebted to various suppliers for materials furnished up to and including October 1, 1953, all of which was furnished to the defendant, Traylor Bros., Inc., by the use plaintiffs including a complete list of the names of such suppliers and the respective amounts owing thereto.

18.

The use plaintiffs claimed the sum of $119,654.79 for the services performed and materials furnished by them on the subcontract less the sum of $4,011.18 in over-spent labor and $49,116.02 in accounts payable and the sum of $60,798.91 in credits to which the defendant, Traylor Bros., Inc., were entitled.

19.

The reasonable value of the labor and services performed and materials furnished by the use plaintiffs under paragraph one of the amended complaint was in the sum of $115,643.61.

20.

On or about Thursday, October 15, 1953, John S. Irvine, John Gangl and J. Phillip Blythe met with Albert H. Cole, Jr., an attorney at Peru, Indiana, by appointment arranged by John Gangl at the direction of Ferris E. Traylor, at which time Mr. Cole, as attorney for the defendant, Traylor Bros., Inc., and at its specific request prepared a written rescission agreement for the purpose of implementing and carrying out a rescission of the subcontract which was re-

viewed by those present, and as a result of corrections or changes requested by John Gangl, was revised by Mr. Cole.

21.

On or about Friday, October 16, 1953, John S. Irvine, John Gangl and J. Phillip Blythe met in the office of the defendant, Traylor Bros., Inc., at Bunker Hill Air Base, reviewed the revised agreement whereupon the original and one or more copies were signed by John S. Irvine, for and on behalf of the use plaintiffs, and were left with John Gangl to be taken to Evansville that evening for signature of Ferris E. Traylor with one executed copy to be mailed to the use plaintiffs the next day, and thereupon John S. Irvine left the Bunker Hill Air Base and John Gangl and J. Phillip Blythe prepared and signed letters to all creditors of the use plaintiffs, as listed thereby, which letters were mailed by John Gangl and which, except for the difference in the addressee and amount, read as follows:

"October 16, 1953
"Laketon Marl & Gravel Co.
"Laketon
"Indiana
"Gentlemen:

"This will advise you that as of this date we have terminated our subcontract for the plumbing, heating, and steam distribution work at the Bunker Hill Naval Air Station and the responsibility for the work to have been done by us under the subcontract has been assumed by Traylor Brothers, Inc., the prime contractor.

"We have arranged with Traylor Brothers that they accept and pay for merchandise invoiced and delivered after October 1, 1953 and their endorsement of this letter will indicate their acceptance of this obligation.

"Our records show that as of October 1, 1953, we owed you for merchandise delivered and invoiced at that time $812.00. We enclose herewith release of mechanic's lien which, upon receipt of the amount

due you from Traylor Brothers, Inc., kindly mail to their office. If your records reflect a different balance on our account, please advise us immediately at Hopewell, Virginia and at the same time advise Traylor Brothers, Inc. at Bunker Hill, Indiana.

"Yours very truly,
"Irvine Company
"By J P Blythe
"Approved October 16, 1953
"Traylor Brothers, Inc.
"By John Gangl"

22.

On the same day, the use plaintiffs sold and delivered to the defendant, Traylor Bros., Inc., a number of tools and items of equipment used or useful in the performance of the plumbing and heating work at an agreed price of $1,024.83.

23.

The defendant, Traylor Bros., Inc., subsequently paid most of the addressees of said letters the sums owing to them by the use plaintiffs but instead of paying the total amount of the accounts payable, as agreed, in the sum of $49,116.02, has paid only the sum of $31,080.79.

24.

Prior to October 16, 1953, the use plaintiffs and the defendant, Traylor Bros., Inc., rescinded the subcontract between them by oral mutual agreement and by their mutual consent and oral agreement terminated said subcontract.

25.

At no time prior to the filing of this action on June 23, 1954, did the defendant, Traylor Bros., Inc., demand that the use plaintiffs complete the performance of their subcontract nor object to, remonstrate concerning, or indicate any displeasure or disapproval of the termination of said subcontract but, on the contrary, orally agreed to a rescission thereof.

26.

At no time have the use plaintiffs relinquished, abandoned or disclaimed any

right to compensation for the work performed by them but, on the contrary, have consistently asserted and claimed the right to receive payment for the work performed by them.

27.

When the defendant, Traylor Bros., Inc., took over the work done and the materials furnished by the use plaintiffs on the job site for the completion of the subcontract it did so under an oral agreement of rescission of the subcontract and by mutual consent and agreement of the parties thereto.

28.

As of September 30, 1953, the use plaintiffs had completed 30% of all work required of them to be performed under the subcontract and on that date the defendant, Traylor Bros., Inc., represented and certified to the Bureau of Yards and Docks of the Navy Department of the United States of America that the work performed on said subcontract was 30% complete and had a value of $122,715.

29.

All the work performed by the use plaintiffs on the subcontract was performed and executed in the Northern District of Indiana.

30.

This action was commenced prior to the date of final settlement of general contract NOy–76135 between the defendant, Traylor Bros., Inc., and the United States of America.

31.

The defendant, Traylor Bros., Inc., should take nothing from the use plaintiffs by reason of its amended counterclaim.

32.

There is due and owing to the use plaintiffs by the defendants on paragraph one of the amended complaint the sum of $23,763.91, which is the balance due for the fair and reasonable value of the services rendered and materials furnished by the use plaintiffs to the defendant, Traylor Bros., Inc., under general contract NOy–76135.

33.

There is due and owing to the use plaintiffs by the defendants on paragraph two of the amended complaint the sum of $1,024.83.

Upon the foregoing findings of fact, the court does now state its

Conclusions of Law.

1.

This court has jurisdiction of the parties to and the subject matter of this action.

2.

The law is with the use plaintiffs and against the defendants on paragraph one of the amended complaint.

3.

The law is with the use plaintiffs and against the defendants on paragraph two of the amended complaint.

4.

The law is with the use plaintiffs and against the defendant, Traylor Bros., Inc., on the amended counterclaim.

5.

The use plaintiffs furnished labor, services and materials to the defendant, Traylor Bros., Inc., under general contract NOy–76135, between the defendant, Traylor Bros., Inc., and the United States of America.

6.

The labor and services were performed and the materials were furnished by the use plaintiffs with the knowledge, consent and approval of the defendant, Traylor Bros., Inc., for the purpose of carrying out general contract NOy–76135.

7.

The subcontract by and between the use plaintiffs and the defendant, Traylor Bros., Inc., evidenced by purchase order No. 34832 was rescinded by the oral agreement of the defendant, Traylor Bros., Inc., and the use plaintiffs and by their mutual oral agreement and consent

**110**

and the defendant, Traylor Bros., Inc., is obligated to pay to the use plaintiffs the reasonable value of the work and services performed and materials furnished by the use plaintiffs.

**8.**

The reasonable value of the labor and services performed and materials furnished by the use plaintiffs under paragraph one of the amended complaint was the sum of $115,643.61 and such labor, services and materials were "labor and materials" within the meaning of § 270b of Title 40 U.S.C.A. being § 2 of chapter 642 of an Act of Congress of August 24,. 1935, being 49 Stat. 794, and were "labor and materials" within the meaning of the bond given by the defendant, Indemnity Insurance Company of North America, and the provisions of § 270a of Title 40 U.S.C.A., being § 1 of Chapter 642 of an Act of Congress of August 24, 1935, being 49 Stat. 793.

**9.**

The use plaintiffs sold and delivered to the defendant, Traylor Bros., Inc., tools and equipment of an agreed value of $1,024.83, for which the defendants are liable under the pleadings and the admission of the defendants.

**10.**

The defendants are entitled to credits of $91,879.70 against the sum of $115,643.61 representing payments made direct to the use plaintiffs by the defendant, Traylor Bros., Inc., and to suppliers of the use plaintiffs and for work performed for the benefit of the use plaintiffs by the defendant, Traylor Bros., Inc.

**11.**

The use plaintiffs are entitled to a judgment against the defendants on paragraph one of the amended complaint in the sum of $23,763.91.

**12.**

The use plaintiffs are entitled to a judgment against the defendants on paragraph two of the amended complaint in the sum of $1,024.83.

**13.**

The use plaintiffs are entitled to a judgment against the defendant, Traylor Bros., Inc., on the amended counterclaim and that defendant, Traylor Bros., Inc., should take nothing by reason of its amended counterclaim.

The clerk of this court is ordered to enter judgment in favor of the use plaintiffs and against the defendants in the sum of $23,763.91 on paragraph one of the amended complaint and in the sum of $1,024.83 on paragraph two of the amended complaint, and that the defendant, Traylor Bros., Inc., take nothing by reason of its amended counterclaim at the costs of the defendants.